## IN EQUITY.

## ROBERT CLOUSTON, Administrator of the Estate of F. J. Porter, deceased, vs. FREDERIC OGDEN.

Upon a petition in Equity addressed to the Chief Justice of the Supreme Court, process may be issued returnable before any Justice acting as Chief Justice for the time being.

The right of survivorship does not exist between merchant partners, under the *Lex Mercatoria.*

It is the duty of a surviving partner to use all diligence in adjusting and settling up the affairs of the partnership, and in disposing of its property and effects, with a view to a final division of the profits, or proceeds, between all parties interested.

The court granted an order requiring the defendant, as surviving partner, to make discovery, and render a full account of the partnership business.

JUDGE ROBERTSON, acting as Chancellor, in delivering his opinion, said :

This is a petition filed by Robert Clouston, Administrator on the Estate of Frederic J. Porter, deceased, praying that the defendant, who is the surviving partner of the firm of Porter and Ogden, may be compelled to make a full discovery touching all matters connected with the partnership in business which existed between him and the said Frederic J. Porter; that the said Ogden may be ordered to make a full account of the assets and liabilities of said firm at the time of the death of his late partner, as also of all moneys received or disbursed by the said Ogden on account of said partnership subsequently to its dissolution, that a Receiver may be appointed by the Court, to settle up the affairs and take charge of the books, credits and effects of the late firm, and that the defendant may be enjoined to abstain from all further interference in the matters of the late co-partnership.

To this petition the defendant demurs on several grounds, the first of which is, that the petition is addressed to the Hon. Wm. L. Lee, Chief Justice of the Supreme Court, and the Subpœna is made returnable before George M. Robertson, Associate Justice. It is urged that Chief Justice Lee having left the kingdom previous to the filing of the petition, it ought to have been addressed to us, as acting for the Chief Justice, and specially charged with the performance of his duties, during his absence.

This is a mere technical objection, and is in our opinion of little weight. It is true the Subpœna ought to have been made returnable before George M. Robertson, acting as Chief Justice, and not as Associate Justice merely, because in the latter capacity we are not empowered to entertain the petition, but the defendant appeared before us to show cause, and made no objection to the form of the subpœna; and we think it is now too late to do so. Had the petition, under the circumstances, been addressed to the Chief Justice of the Supreme Court, without mentioning his name, that would have been correct according to our statute, and we think there can be no doubt that process might have been issued returnable before any one who happened, for the time being, to be charged with the duties of that office. We look upon the petition as addressed to the Court, or the officer, and not to the individual. In the Court of Chancery of the State of New York, all petitions were addressed to the Chancellor, but subpœnas might be made returnable either before the Chancellor, or one of the Vice Chancellors, according to circumstances. Barbour's Chancery Practice, p. 50.

The defendant's next ground of demurrer is, that he, as surviving partner of the late firm of Porter and Ogden, is entitled to the absolute ownership and property of, in and to the whole of the partnership effects; or, in other words, that the common law rule of survivorship, or *jus accrescendi* which existed between joint tenants, applies to partners in business, in this kingdom, in the absence of any statute law to the contrary. If we have not misunderstood the argument of the learned counsel on this point, he admits that by the law merchant no right of survivorship is allowed as between partners, but he contends that the courts of this kingdom must be governed by the rules of the common law, until the Hawaiian Legislature shall have prescribed a paramount rule by express enactment. He contends that

the law merchant is a system of jurisprudence in itself distinct, and separate from the common law.

The position thus assumed by the counsel for the defendant, and which he argued with great ability, is one calling for our earnest consideration, and the startling proposition that the principle of the *jus accrescendi* must be recognized between co-partners in business in this kingdom, has received a thorough examination at our hands.

The argument for this position, it seems to us, hinges mainly upon one point,—resolving itself into this question, Is the law merchant a part of the common law, or is it not? After a careful review of the authorities on this point, we feel satisfied beyond the shadow of a doubt, that the law merchant is a branch, or component part, of the *lex non seripta*, or common law. In support of our opinion on this point, we recur to the familiar division of the laws of England, by Sir William Blackstone, into the *lex non scripta*, the unwritten, or common law, and the *lex scripta*, the written or statute law. Speaking of the former, he says: "The *lex non scripta*, or unwritten law, includes not only general customs, or the common law, properly so called, but also the particular customs of certain parts of the kingdom; and likewise those particular laws that are, by custom, observed only in certain courts and jurisdictions." In speaking of the second of the several branches of the unwritten laws of England, namely, particular customs, in contradistinction to the first branch or general customs, the common law, properly so called, he says: "To this head may most properly be referred a particular system of customs used only among one set of the King's subjects, called the custom of merchants, or *lex Mercatoria*, which, however different from the general rules of the common law, is yet engrafted into it, and made a part of it; being allowed for the benefit of trade, to be of the utmost validity in all commercial transactions." Black. Com. Introduction, Sec. 3.

We may also cite the following:

"The law merchant is a branch of the law of England, and those customs which have been universally and notoriously prevalent amongst merchants, and found to be of public use, have been adopted as part of it, for the benefit of trade and commerce, and are binding on all without proof." Per Lord Denman, in Barnett *vs.* Brondao, 6 Manning & Granger, 665.

"The custom of merchants is part of the common law of this kingdom of which the judges ought to take notice." Per Hobart, C. J., 1 Winch.

"And Powell, Justice, said, that the court would take notice of the *lex Mercatoria*, as that there is no survivorship, or of a general custom, as gavel-kind." Bellasis *vs.* Hester. 1 Lord Raymond's R., p. 281.

We might quote numerous other authorities to prove that what is denominated in the English language, the law merchant, is not properly speaking a distinct system or code, to be administered as a separate jurisdiction by itself, but consists of a body of well known and universally acknowledged customs and usages among merchants, which have gradually been developed and extended from the most ancient times, and which have, from time to time, been incorporated into and now form a component part of that magnificent system of

law, the combined wisdom and experience of many centuries, known by the generic name of the common law of England. We will merely refer to Smith's Mer. Law, p. 24, note; 1 Kent's Com., p. 522. 3 Kent's Com., p. 2. Warren's Law Studies, p. 252. Collyer on Part. p. 2. sec. 2.

The authorities cited by the counsel for the defendant, in support of this part of his demurrer, go no further than to prove that the distinguishing incident of an estate in jointenancy, at the common law, was the *jus accrescendi:* but he has cited none to shew that this right has been recognized as existing between merchant partners, at least for several hundred years past; and indeed the authorities, both ancient and modern, which expressly declare the contrary, are overwhelming. Many of these were referred to by the learned counsel for the plaintiff, in the course of his argument against defendant's demurrer, and are perfectly conclusive on this point, and although we might superadd many others of the same tenor, we will content ourselves with quoting the following:

"Partners are joint tenants of their stock in trade, but without the *jus accrescendi*, or right of survivorship; and this, according to Lord Coke, was part of the law merchant, for the advancement and continuance of commerce and trade. It would seem, however, to have been a point of some doubt as late as the middle of the seventeenth century, whether the doctrine of survivorship did not apply, for the Lord Keeper (Harcourt) in Jeffreys *vs.* Small, observed, that it was common, at that time, for traders, in articles of co-partnership, to provide against survivorship, though he declared that the provision was wholly unnecessary." 3 Kent's Com. p. 36.

The learned Justice Story, after pointing out some important particulars wherein partnership differs from jointenancy, goes on to say, "In the next place, there is no survivorship in cases of partnership, as there is in jointenancy. This has been the doctrine of the common law for more than three centuries, and indeed is probably coeval with the business of joint trade and commerce in England. Thus, Lord Coke in speaking of joint tenancy in chattels and debts, contracts and duties, where the right of survivorship ordinarily exists, adds: 'An exception is to be made of two joint merchants, for the wares, merchandises, debts or duties, that they have as joint merchants, or partners, shall not survive, but shall go to the executors of him that deceaseth, and this is *per legem mercatoriam*, which (as hath been said) is part of the laws of this realm for the advancement and continuance of commerce and trade, which is *pro bono publico;* for the rule is that *Jus accrescendi inter mercatores pro beneficio commercii locum non habet.*'"

We feel that our view of this subject is most fully sustained by the highest authority, and we are therefore spared the necessity of refusing to adopt so harsh and inequitable a doctrine as that contended for by the learned counsel for the defendant. Were it otherwise, and did it appear to the satisfaction of the court, that the right of survivorship did exist between partners, at the common law, we would by no means admit that this court is bound to be governed by such doctrine, but would, without hesitation, as we have a right to do, repudiate the rule as out of place in this enlightened age, as unjust in the extreme, and calculated to work out the destruction of all commer-

W

cial enterprise. We feel that we are sustained in this view of the case by the uniform practice of this court hitherto, which has on many occasions adopted as its- general principle, in mercantile controversies, the equitable doctrines and maxims of the law merchant, although it has never been expressly declared to be the law of this kingdom, by the will of the legislature.

The defendant demurs further, and says if he, as the surviving partner is not entitled to the absolute ownership of the partnership property, by virtue of the *jus accrescendi*, he is at all events entitled to the exclusive control over all such property, including books, until the business and accounts of the partnership are finally settled and closed.

That this is sound legal doctrine, cannot be gainsayed, but it is equally true that the rule is subject to a just limitation, for, as was remarked by the counsel for the plaintiff, the defendant is not entitled to such absolute control, *ad infinitum.* It is the duty of the survivor to use all diligence in adjusting and settling up the affairs of the partnership, and in disposing of the property and effects, with a view to a final division of the profits, or proceeds, between all parties interested. The surviving partner is to be regarded ·in the light of a trustee, and must exercise his functions as such, with due diligence and good faith, and if he comes short of his duty, making unnecessary delay, or committing any misconduct in reference to the winding up of the partnership affairs, or the disposition of the joint property for the common benefit, we think the representatives of the deceased partner have, clearly, a right to invoke the aid of a court of equity to compel a performance of his duty on the part of the survivor, by ordering him to make a full discovery of the partnership transactions, and to render an account; and even by the appointment of a receiver, when the necessity of the case calls for it, to take the whole business out of the hands of the delinquent survivor. See Story on Part., § 347. Collyer on Part., § 301. Story's Equity Jurisdiction, § 671 and 672, and note.

It is unnecessary for the court, at this time, to proceed to the consideration of the remaining points of the defendant's demurrer, as the plaintiff only asks, at present, that the court will grant an order requiring the defendant to make discovery and render an account. We are of opinion that the defendant's demurrer, as to the several grounds we have touched upon, cannot be sustained, and it is therefore overruled.

Mr. Montgomery for complainant.
Mr. Blair for defendant.
Honolulu, May 25, 1855.